AGASH REFINING CORP., APPELLANT, *v.* SOYA PROCESSING CO., APPELLEE.

·176

(No. 1069—Decided May 4, 1942.)

Mr. *Peter E. Klein* and *Messrs. Critchfield, Critchfield & Critchfield,* for appellant.

Mr. *K. E. Hoover* and Mr. *Edward Troutman,* for appellee.

DOYLE, P. J. The action is by a vendee, Agash Refining Corporation, against the vendor, Soya Processing Company, for damages for the alleged repudiation of an installment contract as to future deliveries. The sum of $1,598.20 was stipulated by the litigants as the damage in the event of liability. A jury was waived, and the trial court, after hearing the evidence, entered a judgment for the defendant. From this judgment appeal was perfected on questions of law.

The plaintiff, a New York corporation, is engaged in the business of refining vegetable oil and manufacturing it into various products for human consumption. The defendant is an Ohio corporation, engaged in the business of extracting soy bean oil from the raw bean and merchandising the product to refiners.

. In 1939 the two corporations entered into a contract in which the Ohio company agreed to sell and ship to the New York company five tank cars of crude soybean oil (61,000 ℔s. each) in installments of one car in the months of December, 1939, and January, February, March and April, 1940. The contract further provided the following terms of shipment: "5c per lb., f. o. b. Wooster, Ohio. S/d bill of lading attached. * * * Sold in accordance with rules and regulations of the National Soybean Processors Association."

The first loaded car was shipped from Wooster, Ohio, on December 28, 1939. It was accompanied by a sight draft with bill of lading attached, which draft and bill of lading was directed to the Chase National Bank, New York, in compliance with the instructions of the consignee. The car arrived at the Bush Terminal in New York on January 2, 1940, and the draft reached the bank on the same day. The sight draft was not paid until January 16, nor the car unloaded and released for return to the consignor until January 17.

On January 22, the consignor notified the consignee by letter of its refusal to make further shipments because of the consignee's failure to comply with the terms of the contract by its failure and refusal to immediately accept delivery and make payment therefor. This letter was followed by the following telegram of January 25:

"Agash Refining Co.,

"Brooklyn, N. Y.

"We refuse to ship you oil due to your failure to accept delivery and make payment as due on last shipment and have cancelled remaining four cars.

"(Signed) Soya Processing Co."

The litigation now under consideration thereupon was commenced.

The evidence, most of which is not in dispute, shows the consignor as a company located in a small community and dependent upon local banking facilities to carry on its business. Business requirements therefore necessitated the prompt payment of its accounts and the speedy return of its tank cars, which were under lease from the railroad company. The consignee adopted the practice of unloading cars in the order of their arrival, and, due to the presence of other cars, it was unable to receive the car in question on its siding and unload it unless it was taken out of order.

The record includes many letters and telegrams

from the consignor to the consignee demanding payment for the shipment and the unloading and return of its car. The money was needed in the business, and the car was needed for other shipments. The demands commenced when the consignor first discovered that the consignee had neither paid the draft nor received the car under the terms of the contract.

Included in the evidence are the "Trading rules of the National Soybean Processors Association—Rules to govern purchase and sale of soybean oil." As heretofore noted, these rules are incorporated by reference in the contract under discussion. The pertinent provisions are:

"Rule 5—Terms.

"Section 1. The terms of payment on soybean oil are to be as follows: Net cash, no discount. Car loads: Sight draft, bill of lading attached. * * *.

"Section 3. Failure to accept delivery of or pay for any portion of specified quantity of soybean oil covered by contract shall at seller's option release seller from making further deliveries. In case of default in payment of any invoice when due, the whole sum owed by buyer shall become due at once."

A consideration of the record leads the members of this court to conclude that the judgment of the Court of Common Pleas is not manifestly against the weight of the evidence, nor is it contrary to law.

A part of the Uniform Sales Act, designated in this state as Section 8425, General Code, provides:

"* * *

"(2.) When there is a contract to sell goods to be delivered by stated installments, which are to be separately paid for, and the seller makes defective deliveries in respect to one or more installments, or the buyer neglects or refuses to take delivery of or pay for one or more installments, it depends in each case *on the terms of the contract* and *the circumstances of the case,*

whether the breach of contract is so material as to jus-. tify the injured party in refusing to proceed further and suing for damages for breach of the entire contract, or whether the breach is severable, giving rise to a claim for compensation, but not to a right to treat the whole contract as broken.'' (Italics ours.)

The above statute, in identical form, was given attention by Cardozo, J., in *Helgar Corp.* v. *Warner's Features, Inc.,* 222 N. Y., 449, 119 N. E., 113. This eminent jurist, in writing the opinion, became the author of an American classic in the law of sales. He stated:

''* * * We have departed from the rule of the English statute * * *, which keeps the contract alive unless the breach is equivalent to repudiation * * *. We have established a new test, which weighs the effect of the default, and adjusts the rigor of the remedy to the gravity of the wrong. 'It depends in each case on the terms of the contract and the circumstances of the case' whether the breach is 'so material' as to affect the contract as a whole.

''The answer to that question must vary with the facts * * *. Default in respect of one installment, though falling short of repudiation, may under some conditions be so material that there should be an end to the obligation to keep the contract alive. Under other conditions, the default may be nothing but a technical omission to observe the letter of a promise * * *. General statements abound that, at law, time is always of the essence * * *. For some purposes this is still true. The vendor who fails to receive payment of an installment the very day that it is due, may sue at once for the price. But it does not follow that he may be equally precipitate in his election to declare the contract at an end * · * *. That depends upon the question whether the default is so substantial and important as in truth and in fairness to defeat the

essential purpose of the parties. Whatever the rule may once have been, this is the test that is now prescribed by statute. The failure to make punctual payment may be material or trivial according to the circumstances. We must know the cause of the default, the length of the delay, the needs of the vendor, and the expectations of the vendee. If the default is the result of accident or misfortune, if there is a reasonable assurance that it will be promptly repaired, and if immediate payment is not necessary to enable the vendor to proceed with performance, there may be one conclusion. If the breach is willful, if there is no just ground to look for prompt reparation, if the delay has been substantial, or if the needs of the vendor are urgent so that continued performance is imperiled, in these and in other circumstances, there may be another conclusion. Sometimes the conclusion will follow from all the circumstances as an inference of law to be drawn by the judge; sometimes, as an inference of fact to be drawn by the jury.''

The question of fact presented by a breach, if the situation admits of doubt, should be left to the determination of a jury, unless no reasonable person could draw more than one conclusion. 2 Williston on Sales (2 Ed.), Section 465*b*, at page 1181.

In this case, the court, sitting as the trier of facts, a jury having been waived, had before it the contract and the ''circumstances of the case,'' and in consideration thereof determined the issues in favor of the defendant. In so doing we find the judgment rendered to be one which conforms to the evidence and the law.

*Judgment affirmed.*

STEVENS and SHERICK, JJ., concur.

Sherick, J., of the Fifth Appellate District, sitting by designation in the Ninth Appellate District.